## Patterson v. Commonwealth.

(Decided January 9, 1912.)

### Appeal from Fulton Circuit Court.

Criminal Law—Affidavit for Continuance—Sufficiency of.—An affidavit for a continuance stated that a subpoena had been issued for a witness, and delivered to the sheriff, who did not have time to execute it, but did not show when the subpoena was issued or when it was placed in the hands of the sheriff, it also set out that an absent witness was served with a subpoena but did not state that summary process to secure his attendance was asked: Held, the affidavit did not show such diligence on the part of the defendant as entitled him to a continuance, as the court permitted the affidavit to be read as the deposition of the absent witnesses.

W. H. HESTER for appellant.

JAMES GARNETT, Attorney General and M. M. Logan, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In July, 1909, the appellant shot and killed Ed. Copland. For this crime he was indicted, tried and convicted of voluntary manslaughter, and sentenced to eight years in the State penitentiary. He asks a reversal of the judgment against him because the trial court refused a continuance of the case when it was called for trial and tried in May, 1911.

At the examining trial, appellant's bail was fixed at

$5,000, but being unable to give this, it was reduced to $1,000, which he gave. Afterwards, in May, 1910, the bail surrendered appellant and he was then released on his own recognizance, to appear at the September term of the court, and soon thereafter he moved to the State of Missouri, locating in that State, opposite the county of Fulton, Kentucky, and as convenient to the place of his trial as when he lived in Fulton County. At the September term he failed to answer, and a bench warrant was issued for his arrest, and about nine days before he was put upon his trial he was arrested at his home in Missouri and brought to the jail of Fulton County, where he remained until the trial.

The facts connected with the homicide are substantially and briefly as follows: The deceased was a tenant or cropper on the place that appellant rented, and at the time he was living alone in a small house on the place. No weapon of any kind was found on the person of the deceased, nor in or about the premises where he lived. There had been some disagreement and trouble between the appellant and the deceased previous to the homicide. Early in the morning, appellant who was walking about with his shotgun for the purpose as he says of scaring blackbirds away that were injuring his corn, came to the house where deceased lived. The appellant says that when he shot, the deceased was advancing towards him with his hand in his pocket, and he believed deceased intended to shoot him or do him some bodily harm and that he shot him in self-defense. The deceased died immediately, or at least before anybody came to where his body was. Very shortly after he shot the deceased, appellant said in substance to Thompson and Keith, two persons living in the neighborhood, and whom he met as he was going to surrender himself to the sheriff, that "I killed that damn fellow Copland as dead as hell." The Commonwealth also proved that on the examining trial the appellant testified that he had heard that deceased wanted to see him and that he went over to his house to find out what he wanted and carried his gun along to protect himself in the event he was attacked by the deceased, and did not say anything about carrying his gun for the purpose of killing birds.

Appellant proved on the trial by a witness named Morgan that he saw Copland standing on the little porch of his house when he and the appellant were talking, and heard him abusing the appellant, and presently heard

Patterson say to deceased, "I don't want to shoot you."
At this time the deceased had his right hand behind him
and was advancing on appellant, when the gun fired.
Appellant also proved by Lemasters that he had a con-
versation with the deceased a few days before he was
killed, in which he advised the deceased to let appellant
have the house that he, the deceased, was living in; when
deceased said to him "I am going to hold it for spite,"
and further said, "I can take my gun and go and shoot
the whole damn force, * * * that he could take a piece
of cane that he had in his hand and run him away."

In his affidavit for a continuance, which the court
permitted to be read as the deposition of the absent wit-
nesses, he said that he could prove by his son, Thurman
Patterson, that he saw the deceased advancing upon ap-
pellant at the time the shot was fired, but was too far
away from them to hear what was said—that he could
prove by his son, Clifton Patterson, that he had been in
the habit of carrying his gun for the purpose of shooting
game and scaring blackbirds that were injuring his corn,
and that he carried the gun on the morning of the homi-
cide for this purpose; that he could prove by his daugh-
ter, Grace Patterson, and also by Annie White that on
the evening before the shooting the deceased came to the
house of appellant in his absence and used some abusive
language towards his wife, and said he would kill ap-
pellant before sun-up the next day; that he could prove
by Mrs. Lemasters that she heard the deceased say a
few days before his death that he could take his gun and
kill the whole damn Patterson family; that he could prove
by Elam Roper that he heard the deceased say the day
before he was shot that he was going to kill appellant,
and by Jim Burchett that deceased said that he, the de-
ceased, and appellant could not live in the same place;
that one of them would have to kill the other.

The only reason assigned for not having his three
children present was that he did not have time or op-
portunity after his arrest and incarceration in the jail
to make arrangements to have them attend the trial,
and neither of them had any means that would enable
then to be present; that he had a subpoena issued for
the witness, Annie White, but the sheriff did not have
time to execute it; that Mrs. Lemasters was sick and
unable to attend the court; that Roper had been sub-
poenaed to attend, but was not present; that Burchett

was absent from the United States, but he would secure his presence before the next term of the court.

When it is considered that the children of appellant, who were grown, lived only a few miles from the place of the trial, the mere statement that they were unable to attend because they had no money or way to be present is not sufficient to excuse their absence. It is apparent that if their testimony had been desired by appellant they could have been easily procured as witnesses. Nor does the affidavit show sufficient diligence to procure the attendance of the witness, Annie White. It is stated in the affidavit that she lived in the city of Hickman, in the county in which the trial was had, and that a subpoena had been issued for her and placed in the hands of the sheriff, who did not have time to execute it; but the affidavit does not state when the subpoena was issued or when it was placed in the hands of the sheriff. The evidence of Mrs. Lemasters was in substance the same as that testified to by the witness, Lemasters. The affidavit states that the witness, Roper, was served with a subpoena, but the record does not disclose that appellant asked the court for further process to secure the presence of Roper.

We think the affidavit fails to show due diligence on the part of appellant to procure the attendance of these witnesses. When a trial takes place two years after the crime was committed, and the accused has lived all of the time in the county where the trial was had, or near to it, the ends of justice require that he should make a satisfactory showing that he has used diligence to procure the attendance of the witnesses whom he desires. If a witness has been served with a subpoena, and fails to answer, it is usual and customary to obtain summary process to secure his attendance; and the failure to grant a continuance on account of the absence of a witness who has been subpoenaed will not ordinarily be ground for a reversal unless it is shown that the defendant requested the court to issue an attachment for him.

The evidence for the Commonwealth was amply sufficient to sustain the verdict and the record does not show that the appellant was entitled to a continuance.

Wherefore, the judgment of the lower court is affirmed.